IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES | : | CRIMINAL ACTION |
|---|---|---|
| v. | : | NO. 09-686 |
| TARIK DEPASS, | : | |
| Defendant. | : | |

**OPINION AND ORDER**

**Slomsky, J.**                                                                                             **August 13, 2010**

**I.      INTRODUCTION**

Defendant Tarik Depass was arrested on September 24, 2009 in connection with the robbery of United States Postal employee Elsa Ortiz.[1] On October 22, 2009, a federal grand jury indicted Defendant on one count of robbery of the U.S. Postal employee in violation of 18 U.S.C. § 2114(a). On March 10, 2010, Defendant filed a Motion to Suppress Out-of-Court Identification (Doc. No. 24) now before the Court. The Government filed a response opposing the motion (Doc. No. 25). Upon consideration of the testimony and evidence presented by the parties at the July 1, 2010 hearing, Defendant's Motion to Suppress (Doc. No. 24), the Government's Response (Doc. No. 25), Defendant's Supplemental Motion to Suppress (Doc. No. 54), and the Government's Supplemental Opposition to Defendant's Motion to Suppress (Doc. No. 52) and for the reasons stated below, the Court will deny Defendant's Motion to Suppress Out-of-Court Identification.

---

[1] Briefs from both parties and the transcript from the July 1, 2010 Hearing on this matter reflect different spellings of Ms. Ortiz's first name.

1

## II.     FINDINGS OF FACT

1. On September 12, 2009, Ms. Ortiz attempted to deliver a priority mail package addressed to "Jalen Wilson" at 463 East Cheltenham Avenue, Philadelphia, Pa. (Hearing, July 1, 2010, Hr'g Tr. 7:24-25.)

2. A Caucasian male, later identified as Aramando Zakarewicz,[2] answered the front door of 463 East Cheltenham Avenue and refused the package because no one named Jalen Wilson lived at the address. (Hr'g Tr. 8:1-3.)

3. Ms. Ortiz returned the package to the Post Office. (Def.'s Supplemental Mot. To Suppress, 2.)

4. On September 13, 2009, a request was made for re-delivery of the package. (Id.)

5. At approximately 10:45 a.m. on September 14, 2009, Ms. Ortiz attempted to re-deliver the package to 463 East Cheltenham Avenue. (Id.)

6. Ms. Ortiz encountered Mr. Zakarewicz, standing in an alleyway next to the house at 463 East Cheltenham Avenue, along with two African-American males, and again asked for Jalen Wilson. (Hr'g Tr. 9:10-25.)

7. Mr. Zakarewicz pointed out an African-American male, across the street, later identified as Defendant Tarik Depass. (Hr'g Tr. 8:1-3.)

8. Ms. Ortiz observed Defendant cross the street and informed him, as he was approaching her vehicle, that she needed to see identification before giving him the package. (Hr'g Tr. 10:9-15.) This encounter lasted approximately one minute. (Hr'g Tr. 61:22-24.)

---

[2]Briefs from both parties and the transcript from the July 1, 2010 hearing on this matter also reflect different spellings of Mr. Zakarewicz's last name.

9. Defendant entered the residence at 463 East Cheltenham Avenue and returned with an identification card. (Hr'g Tr. 10:18-23.)

10. Defendant approached Ms. Ortiz at the back of her vehicle and presented his identification card. (Hr'g Tr. pp. 10-11.) Defendant and Ms. Ortiz were standing face-to-face, a few feet apart. (Hr'g Tr. pp. 10-12.) Ms. Ortiz examined the card and noticed that the name and address on the identification card did not match the name and address on the package. (Hr'g Tr. 11:3-11.) Ms. Ortiz remembered the street name on the identification card was Frontenac. (Hr'g Tr. 11:7-9.) Ms. Ortiz refused to give the package to Defendant. (Hr'g Tr. 11:16-19.)

11. During the same conversation, Defendant informed Ms. Ortiz the package was intended for his uncle. (Hr'g Tr. 11:21-22.) Ms. Ortiz informed Defendant that she could not give Defendant the package but that Defendant's uncle could retrieve the package, with proper identification, at the Post Office. (Hr'g Tr. 11:23-25, 12:1-2.) This conversation lasted for "more than a few minutes." (Hr'g Tr. pp. 62-63.)

12. Ms. Ortiz returned the package to her vehicle and moved her vehicle to a nearby 7-Eleven parking lot. (Hr'g Tr. pp. 12-13.) While parked there, Ms. Ortiz overheard voices coming from the alleyway where she had previously encountered Mr. Zakarewicz and two other individuals. She heard an angry voice say, "That b**ch isn't going to give me the package." (Hr'g Tr. 13:11-13.) Ms. Ortiz called her supervisor to report that there was a problem delivering the package. (Hr'g Tr. 13:16-20.)

13. Ms. Ortiz then continued making her deliveries, combining deliveries on two blocks so that she could move quickly to the next location. (Hr'g Tr. pp. 13-14.)

14. After Ms. Ortiz finished these deliveries, she moved her postal truck to the intersection of

Rosalie and Colgate Streets where she took a ten or fifteen minute break. (Hr'g Tr. 23:1-5.)

15. After taking a break, Ms. Ortiz walked to the back of her vehicle to prepare to make another round of deliveries. (Hr'g Tr. 23:6-14.) While standing at the back of her truck, she was pushed from behind. (Hr'g Tr. 23:12-14.) Ms. Ortiz pushed her assailant back, and he fell into the vehicle. (Hr'g Tr. 23:18-23.) He screamed, "I need this package," picked up the package in question, and jumped out of the truck. (Hr'g Tr. 24:18-23.) Ms. Ortiz could see the assailant's face and body during this episode. (Hr'g Tr. pp. 59-60.) Specifically, she saw Defendant for approximately thirty seconds while he was in the back of the truck retrieving the package. (Hr'g Tr. 67:3-9.) It took less than an hour from the time when Ms. Ortiz first refused to hand over the package to Defendant to the moment when she was robbed of the package in the back of her vehicle. (Hr'g Tr. 28:19-22.) At the July 1, 2010 hearing, Ms. Ortiz identified Defendant as the man who robbed her. (Hr'g Tr. 60:6-10.)

16. Ms. Ortiz called the police to report the robbery. (Hr'g Tr. 28:23-24.) Within approximately one hour after the robbery, Ms. Ortiz spoke with United States Postal Inspectors, and provided a description of the man who robbed her and a written statement about the incident. (Hr'g Tr. pp. 28-29; 81.)

17. Ms. Ortiz described her assailant to the Postal Inspectors as an African-American male, skinny, about 5'4" to 5'5" tall, with no distinguishing marks. (Hr'g Tr. 29:3-10.)

18. On September 14, 2009, Postal Inspector John Crockett interviewed Mr. Zakarewicz. (Hr'g Tr. 71:20-23.) Mr. Zakarewicz stated that he knew the individual he had told Ms. Ortiz was "Jalen Wilson" as "Rik." (Hr'g Tr. 72:2-23.)

19. On September 16, 2009, Postal Inspector John Crockett interviewed Mr. Zakarewicz for a

second time. (Hr'g Tr. 72:15-16.) This time, Mr. Zakarewicz said he knew the individual he had told Ms. Ortiz was "Jalen Wilson" as "Rik" and also as "Tarik." (Hr'g Tr. 72:17-19.) Mr. Zakarewicz also gave the Postal Inspectors documents and a photograph he believed belonged to "Rik." (Hr'g Tr. pp. 72-73.) These items included a photograph belonging to Tabari Depass, Defendant's brother. (Hr'g Tr. 73:5-15.)

20. Based on that information, Postal Inspector Crockett prepared a photo array containing the photograph of Tabari Depass. (Hr'g Tr. 73:16-19.) On September 17, 2009, Ms. Ortiz met with Postal Inspector Crockett to view the photo array containing eight photographs, including a photograph of Tabari Depass. (Hr'g Tr. pp. 74-76.) Postal Inspector Crockett instructed Ms. Ortiz to "take her time, look at all the photos contained in the array, to not try and make any decisions. There was no wrong answer. The individual that committed the robbery may or may not be in the array." (Hr'g Tr. 74: 21-25.) Ms. Ortiz did not positively identify any individual in the array, but informed Postal Inspector Crockett that the photo of Tabari Depass, and the photo of another individual, contained physical characteristics similar to her assailant. (Hr'g Tr. pp. 75-77.) Postal Inspector Crockett prepared a report of the viewing. (Hr'g Tr. 77:6-8.)

21. On September 18, 2009, Postal Inspector Crockett interviewed George Torres, another resident of 463 East Cheltenham Avenue. (Hr'g Tr. 78:4-6.) He stated that although the items left at the house belonged to Tabari Depass, the individual Ms. Ortiz encountered at the residence was Tarik Depass. (Hr'g Tr. 78:11-16.) Mr. Torres told Postal Inspector Crockett he also knew Tarik Depass as "Rik." (Hr'g Tr. 78:11-12.)

22. Based on that information, Postal Inspector Crockett prepared a photo array containing a photograph of Tarik Depass. (Hr'g Tr. 78:17-19.) On September 18, 2009, Ms. Ortiz met with

Postal Inspector Crockett to view the photo array containing a photograph of Tarik Depass. (Hr'g Tr. 78-79.) Again, Postal Inspector Crockett instructed Ms. Ortiz to take her time viewing the photographs and to see if she recognized her assailant by focusing on his physical characteristics. He advised her there was no right or wrong answer and her assailant may or may not be pictured in the photo array. (Hr'g Tr. 79:2-9.) Immediately, Ms. Ortiz positively identified Defendant as her assailant. (Hr'g Tr. 79:10-13.) Ms. Ortiz signed and dated Defendant's photograph. (Hr'g Tr. 79:14-17.) Postal Inspector Crockett did not prepare a report of this viewing because Ms. Ortiz made an immediate and unequivocal positive identification. (Hr'g Tr. 79-80.)

## III. DISCUSSION

Defendant moves to suppress evidence of the out-of-court identification made in the photo array, alleging it was impermissibly suggestive and created a substantial risk of misidentification. (Def.'s Mot. to Suppress ¶¶ 9-10.) Defendant argues that this out-of-court identification violates his Fifth Amendment right to due process. (Def.'s Mem. in Supp. of Mot. to Suppress 1.)

The Fifth Amendment provides, in pertinent part, that: "No person ... shall be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. An identification procedure violates this right to due process if it is both (1) unnecessarily suggestive and (2) creates a substantial risk of misidentification. U.S. v. Brownlee, 454 F.3d 131, 137 (3d Cir. 2006) (citing Manson v. Brathwaite, 432 U.S. 98, 107 (1977)).

To determine if a photo array is unnecessarily suggestive, a court considers factors including the size of the array, the manner of the presentation by the officials conducting the

array, and the details of the photographs themselves. U.S. v. Rogers, 491 F.Supp.2d 530, 535 (M.D.Pa. 2007) (citing Reese v. Fulcomer, 946 F.2d 247, 260 (3d Cir. 1991)). Defendant bears the burden of proving the identification procedure was unnecessarily suggestive. U.S. v. Lawrence, 349 F.3d 109, 115 (3d Cir. 2003) (citing Reese, 946 F.2d at 259). Even if the court finds that the procedure was unnecessarily suggestive, it must determine whether the identification was nonetheless independently reliable, i.e., that the procedure did not create a substantial risk of misidentification. Raheem v. Kelly, 257 F.3d 122, 133 (2d Cir. 2001).

Whether an identification procedure creates a substantial risk of misidentification depends upon the totality of the circumstances, considering factors such as (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Brownlee, 454 F.3d at 138-39 (citing Brathwaite, 432 U.S. at 199).

### A. The Photo Array Was Not Unnecessarily Suggestive

As noted above, to determine if a photo array is unnecessarily suggestive, a court considers factors including the size of the array, the manner of the presentation by the officials conducting the array, and the details of the photographs themselves. Rogers, 491 F.Supp.2d at 535. An array with as few as six pictures is not *per se* unconstitutional. Id. (citing U.S. v. Stevey, No. 05-232, 2006 WL 2038614, *4 (W.D.Pa. July 20, 2006)). However, the larger the size of the photo array, the less likely it is that a minor difference will have a prejudicial impact. U.S. v. Sanchez, 24 F.3d 1259, 1262 (10th Cir. 1994). In this case, both photo arrays viewed by Ms. Ortiz contained eight pictures. (Gov't Ex. 4; Gov't Ex. 5.) Consequently, the photo arrays

were large enough in size to avoid being unnecessarily suggestive based on this factor alone.

The manner of presentation of the photos may be unnecessarily suggestive if an officer emphasizes a particular photograph or suggests a photograph the witness should identify. Rogers, 491 F.Supp.2d at 535-36. However, an officer telling a witness that a suspect in the case is present in the photo array is not *per se* unnecessarily suggestive. See U.S. v. McNeill, No. 06-373, 2007 WL 2234516, *5 (W.D.Pa. Aug. 02, 2007) (finding the photo array was not unnecessarily suggestive, even though the officer told the witness a suspect was present in the array, because the witness did not feel undue pressure to identify the criminal as a result of the officer's statement).

Here, Defendant argues Postal Inspector Crockett instructed Ms. Ortiz to select any individual she "recognized," as opposed to the picture of her "assailant." (Def.'s Mot. to Suppress 4.) According to Defendant, this created an unnecessarily suggestive identification procedure because she may have recognized Defendant from the encounter prior to the robbery. (Id.) However, Postal Inspector Crockett testified that his instructions to Ms. Ortiz at both photo arrays, "were specifically to identify, if present, the individual that committed the robbery against her." (Hr'g Tr. 92:13-15.) Postal Inspector Crockett did not emphasize a particular photograph, suggest a particular photograph, or tell Ms. Ortiz a suspect was present in the array. Postal Inspector Crockett did not present Defendant's photograph by itself or multiple times. (Hr'g Tr. 80: 2-17.) Consequently, the manner of presentation of the photo array was not unnecessarily suggestive.

As to the details of the photographs themselves, the "primary question is whether the suspect's picture is so different from the others that it suggests culpability." Rogers, 491

8

F.Supp.2d at 536 (quoting Reese, 946 F.2d at 260). However, all photographs in the array need not be uniform with respect to a given characteristic. Stevey, 2006 WL 2038614, at *4 (citing Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986)). There is also no requirement that a suspect in a lineup be surrounded by people identical in appearance. Id. (quoting Tavarez v. Le Fevre, 649 F.Supp. 526, 530 (S.D.N.Y. 1986)).

Defendant argues that several pictures in the second photo array did not match Ms. Ortiz's description of her assailant. Ms. Ortiz described her assailant as an African-American male, skinny, about 5'4" to 5'5" tall, with no distinguishing marks. According to Defendant, the second photo array contained at least four photographs of African-American men who "look considerably larger than an individual whom one would traditionally describe as 'skinny'" because "the faces of those men are full." (Def.'s Mot. to Suppress 3.) Defendant argues that although two pictures depict "skinny" men, those men are too tall to fit Ms. Ortiz's height description. (Def.'s Mot. to Suppress 3-4.)

Postal Inspector Crockett assembled the photo array using a computer program designed to select individuals with characteristics similar to those of the suspect.[3] (Hr'g Tr. 85: 9-17.)

---

[3]Defendant argues that the process Postal Inspector Crockett used to create the array is suspect in itself because Postal Inspector Crockett entered characteristics of the suspect, Tarik Depass, into the computer program, rather than characteristics based on the description Ms. Ortiz gave in her initial interview. (Def.'s Supplemental Mot. to Suppress 3.) The Court does not find it unduly suggestive to use characteristics of a suspect to create a photo array. As one district court recently explained, individuals for a photo array should be chosen "based solely on physical characteristics with the intent of including those that most closely match the suspect's attributes." U.S. v. Barr, 454 F.Supp.2d 229, 232 n.1. (E.D.Pa. 2006).

Defendant further argues that the photo selection process is inherently suspect because Postal Inspector Crockett personally selected the photos for the array after the computer had generated a group of photos, i.e., that Postal Inspector Crockett "chose to override the computer's selection process." (Def.'s Supplemental Mot. to Suppress 3.) This is not an accurate

The photos need not show individuals with identical characteristics. They must merely depict similar enough characteristics so that the suspect's picture does not stand out from the others in a way that would suggest culpability. Rogers, 491 F.Supp.2d at 536 (citing Reese, 946 F.2d at 260).

The Court has viewed the photo arrays and finds Defendant's argument on this point untenable. Given the totality of the circumstances discussed *infra*, Defendant's claim that the height and weight of the individuals in the photo array do not closely enough match the height and weight of Defendant does not rise to the level of unnecessary suggestiveness. See Lawrence, 349 F.3d at 116 (holding that a lineup where the defendant was the only one pictured shirtless and wearing jewelry, when jewelry was part of the description of the assailant, did not deny due process because the totality of the circumstances established the reliability of the identification); Grubbs v. Hannigan, 982 F.2d 1483, 1490 (10th Cir. 1993) (holding that a swollen eye or a particular hair style are striking enough differences to create unnecessary suggestion, but mere differences in facial characteristics are not); McNeill, 2007 WL 2234516, at *4 (holding that "minor physical differences" such as appearing older than the other individuals in the array, is not unnecessarily suggestive, given the totality of the circumstances); Stevey, 2006 WL 2038614, at *4 (holding that a lineup was not unnecessarily suggestive, given the totality of the circumstances, where a defendant was the only one pictured who had red hair). "To

---

description of the nature of the computer program. Postal Inspector Crockett testified that the program generates a large pool of photos that fit the criteria entered and the user individually selects photos to create the array. (Hr'g Tr. 87:24-25; 88:1-7.) The computer program merely generates the selection pool, not the array itself. The final photo array is created by the user. Therefore, Postal Inspector Crockett was not overriding the computer's selection process, but utilizing the program in the way it was designed to be used.

allow...minor differences to vitiate an otherwise valid pretrial identification procedure would place an undue burden on law enforcement officers to 'search for identical twins in age, height, weight, or facial features' when administering such procedures." Rogers, 491 F.Supp.2d at 536 (quoting U.S. v. Traeger, 289 F.3d 461, 474 (7th Cir. 2002)). Thus, such minor differences as fullness of face or apparent height of the other individuals in the photo array, given the totality of the circumstances surrounding Ms. Ortiz's identification of Defendant, did not create an unnecessarily suggestive procedure.[4]

### B. The Photo Array Did Not Create a Substantial Risk of Misidentification

Even assuming, *arguendo*, the identification procedure was unnecessarily suggestive, a violation of due process only occurs if there is also a substantial risk of misidentification. Brownlee, 454 F.3d at 137. Whether an identification procedure creates a substantial risk of misidentification depends on the totality of the circumstances, considering the following factors establishing reliability: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. Brownlee, 454 F.3d at 139.

---

[4]Defendant suggests that the differences were "noticeable" rather than minor, and that these differences are permissible "only if 'the photographs were virtually identical in composition and quality, and the men portrayed were reasonably comparable in dress and appearance.'" (Def.'s Supplemental Mot. to Suppress 6) (quoting U.S. v. Dowling, 855 F.2d 114, 117 (3d Cir. 1988)). However, there is nothing to suggest the composition and quality of Defendant's picture was not virtually identical to the other pictures in the array, and the Court finds the photos are similar enough in height and weight to be "reasonably comparable" in appearance.

11

### i. Opportunity of the Witness to View the Assailant at the Time of the Crime

Defendant argues that Ms. Ortiz was only able to observe her assailant for a matter of seconds in the midst of a frightening situation. (Def.'s Mot. to Suppress 5.) However, Ms. Ortiz testified that she had an unobstructed view of Defendant for several minutes before the robbery (Hr'g Tr. 58: 21-24) and was able to see her assailant's full body and face during the robbery. (Hr'g Tr. 60: 1-10.) Before the robbery, Ms. Ortiz observed Defendant walking towards her from across the street; she spoke with him for a few minutes face-to-face; and she examined his identification. Ms. Ortiz testified that less than an hour passed from this face-to-face encounter to the time when she was attacked at the back of her vehicle. During the attack she was able to see her assailant's face. Although Ms. Ortiz's view of her assailant may have lasted only seconds, Ms. Ortiz's unobstructed, close-range view of Defendant for several minutes before the attack establishes the reliability of her identification of him as her assailant. See Lawrence, 349 F.3d at 116 (finding that witnesses' identifications were reliable because they had a clear, unobstructed opportunity to view the defendant in a calm atmosphere before the incident).

### ii. Witness' Degree of Attention

Although Ms. Ortiz may have been frightened during the attack, she previously examined an identification card Defendant provided to determine if Defendant was Jalen Wilson. Ms. Ortiz examined the card long enough to notice that the name and address on the card did not match those on the package, and she was able to commit to memory the street name on the identification card. Further, Ms. Ortiz was an observant witness who was able to recall with clarity details of the incident during the hearing. See McNeill, 2007 WL 2234516, at *6. Consequently, Ms. Ortiz demonstrated a high degree of attention during her encounter with

Defendant.

### iii. Accuracy of the Witness' Prior Description of the Assailant

Ms. Ortiz described her assailant as an African-American male, skinny, about 5'4" to 5'5" tall, with no distinguishing marks, wearing a grey t-shirt and jeans. This assessment, although somewhat generalized, fits Defendant's characteristics.

### iv. Level of Certainty Demonstrated by the Witness at the Confrontation

During the identification procedure, Ms. Ortiz was instructed to select an individual "only if she was sure of her identification." (Gov't's Resp. to Def.'s Mot. to Suppress 8.) Notably, Ms. Ortiz did not identify an individual as her assailant in the first photo array. However, after viewing the second photo array, Ms. Ortiz immediately and unequivocally identified Defendant. Ms. Ortiz also testified that she was "very certain" Defendant seated in court was her assailant. (Hr'g Tr. 32: 6-11.)

### v. Length of Time Between the Crime and the Confrontation

Ms. Ortiz viewed the second photo array containing Defendant's picture four days after the incident. This time lapse is short enough to ensure the reliability of Ms. Ortiz's identification. See McNeill, 2007 WL 2234516, at *6 (finding two months between the crime and confrontation was reliable).

Accordingly, a consideration of the totality of the circumstances shows that Ms. Ortiz's identification is independently reliable, notwithstanding any possibility of unnecessary suggestiveness in the identification procedure.

## IV.     CONCLUSION

An identification procedure violates due process only if the defendant proves it is unnecessarily suggestive and the Court finds that this creates a substantial risk of misidentification.  Brownlee, 454 F.3d at 137.  Here, Defendant has not met his burden of proving the identification procedure was unnecessarily suggestive.  Furthermore, despite Defendant not meeting this burden, the totality of the circumstances establishes the independent reliability of Ms. Ortiz's identification.  The out-of-court identification did not violate Defendant's Fifth Amendment due process right and Defendant's Motion to Suppress Out-of-Court Identification will be denied.  An appropriate Order follows.